# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-00304-MSK-MJW

ASHLEY DROLLINGER, individually and on
behalf of similarly situated persons,

      Plaintiff,

v.

NETWORK GLOBAL LOGISTICS, LLC,
ACTION COURIERS, INC. and MEDICAL
LOGISTIC SOLUTIONS, LLC

      Defendants.

---

## DEFENDANTS' OBJECTION TO MAGISTRATE JUDGE'S ORDER REGARDING PLAINTIFFS' MOTION FOR PROTECTIVE ORDER

---

Defendants, Network Global Logistics, LLC ("NGL"), Action Couriers, Inc., and Medical Logistics Solutions, LLC ("MLS"), respectfully submit this Objection to Magistrate Judge Watanabe's January 8, 2018 Order (ECF No. 161) (the "Order") on Plaintiffs' Motion for Protective Order (ECF No. 140).

## I.    INTRODUCTION AND RELIEF REQUESTED

FLSA collective actions, unlike class actions, involve the affirmative joinder of Plaintiffs, each of whom has "independent individual claims." (ECF No. 145-1 at 38:1-3.) Given this procedural posture, it is incumbent on counsel and the Court both to "make sure that the rights of the plaintiffs are properly described and protected and

that the rights of the defendants are similarly protected as against claims of individual plaintiffs." (*Id.* at 16:7-9.) In other words, the collective action procedure will not allow expedience to impose its will on the substantive rights of the parties to prove or defend each of the claims.

Magistrate Watanabe's Order—quashing Defendants' interrogatories and deposition notices—denies Defendants the ability to discover and test the issues on which each Plaintiff's claims turn. Specifically, as this Court is aware, there is no dispute that Plaintiffs' employer, MLS, paid each of them in excess of the federal minimum wage *and* paid them an additional amount to cover the expenses associated with operating their vehicles. As a result, the central question(s) to be decided at trial are whether *any* of the Plaintiffs incurred expenses that exceeded the amount of their expense reimbursement, and if so, by how much?

Magistrate Watanabe's Order precludes Defendants from utilizing any of the discovery vehicles under the Federal Rules to assess and test this information. Not only does the "questionnaire" that the Order offers find no home in the Federal Rules, it also completely eliminates cross examination or any other method of validation. Of course, the impact of the Order is exacerbated by the fact that Plaintiffs intend to have their expert use this unverified and untested data to establish the liability elements of each of their claims. That expert has no personal knowledge of what or how much any Plaintiff expended in the course of performing his job. In other words, if Magistrate Watanabe's Order is allowed to stand, Defendants will be forced to

defend against Plaintiffs' claims with no ability before or during trial to cross examine anyone with knowledge of the facts on which Plaintiffs' claims turn.

The Order is clearly erroneous. Defendants' discovery is precisely proportional to the claims; it seeks only the information essential to determining liability. Moreover, the Order prejudices, not protects, "the rights of the defendants . . .as against claims of individual plaintiffs." (*Id*.)

## II.     RELEVANT FACTUAL BACKGROUND

### A.     Background Leading to the Parties' Discovery Dispute

Plaintiffs, current and former MLS employees that used their own vehicles to perform medical courier duties, bring their respective claims as a collective action under the FLSA for failure to pay the minimum wage. (ECF No. 1 at ¶¶ 52-64.) The gravamen of the Complaint is that Plaintiffs incurred expenses in performing their duties that caused their wages to fall below the federal minimum wage.

Plaintiffs moved for conditional certification of their FLSA claim on September 30, 2016. (ECF No. 56.) At the January 18, 2017 Rule 16 hearing, the Court determined that there were other potential Plaintiffs who may be able to assert the same kind of claim as Mr. Drollinger and that it was appropriate for Plaintiffs to send out the *Hoffmann-La Roche* notice to these individuals. (ECF No. 145-1 at 23:12-24:21.) However, at that same hearing, the Court made clear the following:

- In allowing Plaintiffs to send out the *Hoffmann-La Roche* notice, the Court was not determining "whether the claims have merit," (*id*. at 18:9-12);
- Each Plaintiff had "independent, individual claims" (*id*. at 38:1-3);

3

- Plaintiffs and Defendants in a FLSA collective action have different rights than those in a Rule 23 class action (*id.* at 16:1-9);

- Individuals who opt-in to a FLSA collective action are not class members and do not have to participate solely through a class representative (*id.* at 18:18-22, 19:17-22);

- That certification and class based analysis is inappropriate in a FLSA collective action in order to ensure that "the rights of the defendants are . . . protected as against the claims of individual plaintiffs" (*id.* at 16:7-9); and

- More discovery was likely necessary in light of the "factual issue of what individual collective action opt-in plaintiffs earned and ha[d] as expenses" (*id.* at 34:9-12).

After this Court's decision, Defendants deposed an initial 30 opt-in Plaintiffs. Those depositions demonstrated Defendants' need for full discovery from each opt-in Plaintiff regarding expenses and vehicle related information. (*See* ECF No. 145 at 11-23.) Defendants therefore served interrogatories and document requests on all Plaintiffs (ECF No. 140 at 1); Plaintiffs objected to these written discovery requests. After the parties were unable to resolve their dispute, Plaintiffs filed a motion for a protective order as to the written discovery on October 4, 2017. (*Id.*) On October 17, Defendants noticed 15 additional depositions in an effort to discover further expense

and vehicle-related information underlying the respective opt-in Plaintiff's claims. [1] (*see also* ECF No. 149 at 2, n.1 (Court recognition that FLSA plaintiffs' claims rise and fall on their own.))

### B. Magistrate Judge Watanabe's Order on Plaintiffs' Motion for Protective Order

On January 8, 2018, Magistrate Watanabe issued a ruling on Plaintiffs' motion. (ECF No. 161.) In that Order, Magistrate Watanabe noted this Court's explanation of the differences between Rule 23 class actions and FLSA collective actions, including the fact that each Plaintiff has individual claims and can participate individually in the collective action. (*Id.* at 2.) Despite his recognition of the individual participation of all Plaintiffs, Magistrate Watanabe granted Plaintiffs' motion and, in doing so, relied on precedent that improperly injected a class action approach to collective actions, using "representative discovery." *(See id.* at 4 (citing *Greer v. Challenge Fin. Investors Corp.*, 2007 WL 1341774, at *3 (D. Kan. May 4, 2007.)))

Specifically, Magistrate Watanabe held:

- Deposing all remaining opt-in Plaintiffs will violate Rule 1 and Rule 26 (*id.* at 5);

---

[1] On reply, Plaintiffs attempted to join the noticed depositions to their Motion for Protective Order. (*Id.*) While Defendants did not agree that Plaintiffs' initial motion covered the deposition notices, Defendants noted that the Court's ruling as to written discovery would provide guidance as to the depositions.

5

- The parties should meet and confer regarding an appropriate sub-set of opt-in Plaintiffs who have not yet been deposed[2] and should be deposed (*id.*);

- Rather than written discovery, Plaintiffs should be asked to respond to a sworn questionnaire that can be answered without the assistance of counsel (*id.*); and

- If, after receiving the questionnaire, Defendants need further discovery, they can either enter into a stipulation with Plaintiffs or shall file a motion requesting further written discovery and explaining the basis for the need for that discovery (*id.*).

## III. STANDARD OF REVIEW

Objections to a non-dispositive order of a Magistrate Judge are evaluated under Federal Rule of Civil Procedure 72. *U.S. v. CEMEX, Inc.*, 2012 WL 4356212, at *6 (D. Colo. Sept. 24, 2012). Under this rule, a district court "must consider timely objections" to a magistrate judge's order on a non-dispositive motion and "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. Pr. 72; *see also* 28 U.S.C. § 636 (b)(1)(A) ("A judge of the court may reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is

---

[2] At the time Plaintiffs' filed motion, there were 166 opt-in Plaintiffs in this action, (ECF No. 140 at 1); Defendants had deposed 30 of those plaintiffs as of the date Plaintiffs filed the motion. (ECF No. 145 at 3.) Since the filing of Plaintiffs' motion, a number of opt-in Plaintiffs have withdrawn from this action. (ECF No. 161 at 2, n.2.) There are currently 135 opt-in Plaintiffs that are party-plaintiffs and, of those 135 individuals, 35 have been deposed, 7 have responded to written discovery requests, and 11 have produced documents. (*See* ECF No. at 3.)

clearly erroneous or contrary to law."). In other words, a district court can reverse the ruling of a magistrate judge where "the Magistrate Judge abused his discretion or, if after viewing the record as a whole, the Court is left with a 'definite and firm conviction that a mistake has been made." *CEMEX, Inc.*, 2012 WL 4356212 at *6.

## IV. ARGUMENT

The United States Supreme Court has recognized that "[t]he need to develop all relevant facts in the adversary system is both fundamental and comprehensive." *Taylor v. Illinois*, 484 U.S. 400, 408-09 (1988). Equally important to the pursuit of truth and fairness in our legal system is adversarial testing of evidence. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 318 (1981) ("the [legal] system assumes that adversarial testing will ultimately advance the public interest in truth and fairness."); *see Simpson v. Univ. of Colorado*, 220 F.R.D. 354, 357 (D. Colo. 2004). While it is true that a Court has full discretion to "restrict or preclude discovery when justice requires in order to protect a party or person from annoyance, embarrassment, oppression, or undue burden," *Simpson*, 220 F.R.D. at 357, before this determination, the Court needs to consider "the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *Id.*

### A. Magistrate Watanabe's Ruling that Defendants' Discovery Requests Are Disproportional to the Needs of the Case Is Clearly Erroneous.

Magistrate Judge Watanabe granted Plaintiffs' motion because allowing Defendants to pursue discovery as to each opt-in Plaintiff would "violate Rule 1 and Rule 26." (ECF No. 161 at 3.) This finding is clearly erroneous. As the Order itself

acknowledges, before a court constrains a party's right to obtain relevant discovery as unreasonable or unduly burdensome, "it must first assess the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." (*Id.*) While Defendants do not dispute that Magistrate Watanabe considered these issues, it respectfully submits that his assessment of the "importance of the issues" and the "importance of the proposed discovery" is wrong.

Each Plaintiff's minimum wage claim turns on whether, on a weekly basis, (1) the total compensation MLS paid each driver (information known to MLS), (2) less the work related expenses each driver incurred (information only known by each Plaintiff and only applicable to that Plaintiff), (3) when divided by the total hours each driver worked (information known to MLS), (4) resulted in an average wage of at least $7.25 per hour. *See generally Romero v. Top-Tier Colorado LLC*, 2016 WL 497095, at *4-5 (D. Colo. Feb. 9, 2016). There is no dispute in this litigation that MLS paid each Plaintiff a paycheck that was above the minimum wage for each hour worked in a given work week; rather, the essence of Plaintiffs' complaint is that each Plaintiff incurred expenses during the course of their employment that *caused* their compensation to fall below the federal minimum wage.

Defendants' discovery requests seek evidence from each Plaintiff that is essential to each Plaintiff establishing that MLS is liable for a minimum wage violation—namely evidence of each Plaintiff's business expenses and information

8

related to how each Plaintiff incurred those expenses.[3] This evidence is *the evidence* on which liability turns; it is, quite literally, *the* issue in the litigation. And, because (1) each Plaintiff has an "independent, individual claim" that he/she must prove individually, (2) each Plaintiff can only prove their claim by demonstrating that the expenses they incurred brought their wages below the federal minimum wage, and (3) evidence of each Plaintiff's expenses bears no relevance on any other Plaintiff, it is essential that Defendants obtain this information from each Plaintiff. Given the importance of this evidence and the necessity of each Plaintiff producing this evidence in order to establish liability, Magistrate Judge Watanabe's ruling granting Plaintiffs' motion pursuant to Federal Rule of Civil Procedure 1 and 26 was clearly erroneous and should be reversed.

---

[3] That Plaintiffs assert they can establish both liability and damages through their expert's calculation of estimated vehicle costs changes nothing. (ECF No. 140 at 5.) Plaintiffs' own expert admits that *each Plaintiffs'* individual evidence related to expenses are essential to forming his opinion. For example, Mr. Lauria testified that he "would ask for the same types of information" for all the other plaintiffs that he did for Ms. Coffelt—the plaintiff on whom he based his initial opinion—because it would "be necessary in order for [him to obtain such information in order] to provide an opinion." (ECF No. 145 at 14-15; ECF No. 145-08, Lauria Tr. 18:21-19:19.) As a result, no matter how you approach the issue, evidence of each opt-in's expenses—which Defendants focused their discovery on (ECF Nos. 140-3 and 140-4) is essential to whether each Plaintiff can establish their claims. Defendants have a right to both discover that evidence and test it on cross-examination.

9

## B. The Discovery Approach Adopted in the Order Is Clearly Erroneous Because It Prioritizes Expediency Over the Discovery of Admissible Evidence.

In the Order, Magistrate Watanabe holds that the parties should undertake two "intermediate" discovery measures: (i) take the depositions of a subset of Plaintiffs and (ii) issue a questionnaire to each Plaintiff in lieu of written discovery. (ECF No. 161 at 5.) However, these two intermediate measures are insufficient and inappropriately prioritize the Federal Rules of Civil Procedure's interest in efficiency over the Federal Rules of Evidence.

First, it is inappropriate to limit depositions to a subset of Plaintiffs in a case where each Plaintiff has individual and independent claims such that evidence related to one Plaintiff's expenses has no bearing on a different Plaintiff's expenses. This approach is effectively a denial of discovery—and the ability to cross-examine any expense evidence—as to any Plaintiff who is not in the subset that Defendants depose.[4] Additionally, an approach to discovery that allows Defendants only to depose a subset of Plaintiffs essentially embraces the concept of representative discovery. (*See infra* § IV.C.) Because Plaintiffs cannot prove their claims through collective or

---

[4] Defendants' concern that they will be deprived of necessary discovery is not theoretical. Defendants reached out to Plaintiffs to discuss the appropriate subset of deponents after receiving Magistrate Watanabe's Order. In response, Plaintiffs explained that, while they are willing to entertain a proposal from Defendants, their position is that no further depositions are needed. Plaintiffs' counsel provided no explanation to support its position and no explanation of how the testimony from the 30 Plaintiffs who have been deposed would shed any light on the claims of the remaining 100 plaintiffs who have not been deposed.

10

representative evidence, such an approach is inappropriate. *See Oldershaw v. DaVita Healthcare Partners, Inc.*, No. 1:15-cv-01964-MSK-NYW, ECF No. 137 (D. Colorado, July 14, 2017) (Wang, Mag.) (holding that all Plaintiffs in a similar FLSA action before this Court were required to fully participate in discovery in light of this Court's rulings on the purpose of collective actions).

Second, the intermediate step of a "straight-forward" questionnaire is similarly inappropriate and ineffective. Discovery via questionnaire is not a recognized discovery tool under the Federal Rules (which means that Defendants have no mechanism to ensure that each Plaintiff completes the questionnaire) and will not provide Defendants with any evidence that can be challenged at trial. Nor, of course, can Plaintiffs use the questionnaires. Each constitutes an out-of-court statement offered for the truth of their content; the very definition of hearsay. *See* Fed. R. Evid. 801.[5]

The consequences of Magistrate Judge Watanabe's Order are palpable. First, the Order excludes a majority of parties from the discovery process and unreasonably limits Defendants' ability to discover, let alone test, the only evidence relevant to individual Plaintiff's claims. Second, the approach adopted by Magistrate Judge

---

[5] Nor do the Federal Rules of Evidence permit plaintiffs to bring in this evidence via their expert. The rules allow an expert to rely on hearsay in formulating their opinion to the extent it is customarily relied upon by people with his or her expertise. The expertise, in this context, of Plaintiffs' expert is as a testifying witness. The Federal Rules of Evidence do not permit an expert to serve as a conduit for bringing in otherwise inadmissible information.

11

Watanabe essentially means that any multi-plaintiff case would need only to name more than ten plaintiffs in order to shield some plaintiffs from ever being deposed— i.e., cross-examined—before trial. Such a result is unjust; it does not preserve a defendant's right to mount a vigorous defense against each individual plaintiff's claims. *Visor v. Sprint/United Mgmt. Co.*, 1997 WL 567923 (D. Colo. Aug. 18, 1997) (explaining that "[t]he right to participate in the adjudicatory process is fundamental to our system of justice" and reasoning that "[c]ourts, especially in discovery, must be ever vigilant to protect these principles and to guard against their erosion by exception.") The Federal Rules do not allow a court to bar the discovery of relevant *and* admissible evidence in the name of expedience. *See* Fed. R. Civ. P. 26; *Simpson*, 220 F.R.D. at 357.

### C. Judge Watanabe's Order Is Fundamentally Inconsistent with The Conduct of an FLSA Collective Action.

Under Tenth Circuit precedent, the Court can overturn Magistrate Watanabe's ruling "if after viewing the record as a whole, the Court is left with a 'definite and firm conviction that a mistake has been made.'" *CEMEX, Inc.*, 2012 WL 4356212 at *6. It is clear that, upon reviewing this Court's guidance to the parties regarding collective actions under the FLSA, Magistrate Judge Watanabe's ruling is in error and should be reversed.

This Court has not certified any class of individuals to pursue this FLSA collective action and has not sanctioned the use of collective or representative evidence to prove each Plaintiff's claim. (*See* ECF No. 145-1 at 18:5-9 ("There is no

certification of a collective action, in contrast. . . ."); *id.* at 12:22-13:8 (noting that "similarly situated" in the FLSA context merely means Plaintiffs have advanced the same claim, "[n]ot whether the claims have any merit" or whether there was a common policy that "could result in a systemic violation of the FLSA.")) To the contrary, this Court has specifically recognized that Plaintiffs are not class members and do not have to participate solely through a class representative. (*Id.* at 18:18-22, 19:17-22.) Each Plaintiff has "independent, individual claims," (*id.* at 38:1-3.) Each of those "independent, individual" claims must be proven through the evidence that demonstrates whether *that Plaintiff's* expenses caused their wages to fall below the federal minimum wage in a given week. Plaintiffs cannot use collective or representative evidence to prove liability in this case because the expenses Driver A incurred have no bearing on the expenses Driver B incurred.

Magistrate Jude Watanabe's Order prevents Defendants from discovering and testing this evidence. Instead, that Order leaves Defendants with only a subset of depositions and written discovery, which will provide no basis on which to assess— let alone defend against—the claims of Plaintiffs who are not deposed.

## V. CONCLUSION

The Magistrate Judge's Order finds no home in the Federal Rules and prejudices Defendants' ability to test each Plaintiff's claim. Nothing in the Order justifies this result or a return to the days of "trial by ambush."

Dated: January 22, 2018

Respectfully submitted,

*s/Adam C. Smedstad*
Adam C. Smedstad
Scopelitis Garvin Light Hanson & Feary
30 West Monroe, Suite 600
Chicago, Illinois 60603
Telephone: (312) 255-7200
Facsimile: (312) 422-1244
Email: asmedstad@scopelitis.com

One of the attorneys for Defendants

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 22, 2018 the foregoing was filed electronically. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*s/Adam C. Smedstad*
Adam C. Smedstad

4826-0515-3882, v. 8